SEALED

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 25-mj-01411-BLM |
|---|---|
| Plaintiff, | COMPLAINT FOR VIOLATION OF: |
| v. | Title 18 U.S.C. § 371 and Title 8 U.S.C. § 1324(a)(2)(B)(ii) – Conspiracy to Bring in Aliens for Financial Gain (Felony) |
| FARLIS ALMONTE and RICARDO RODRIGUEZ, | |
| Defendants. | Title 8 U.S.C. § 1324(a)(2)(B)(ii) – Bringing in Aliens for Financial Gain (Felony) and Title 18, U.S.C., § 2 – Aiding and Abetting |
| | Title 18 U.S.C. § 201(b)(2)(C) – Receipt of Bribes by Public Official (Felony) |

The undersigned complainant being duly sworn states:

Count 1

Beginning on a date unknown and continuing at least up to and including January 20, 2025, within the Southern District of California and elsewhere, defendants FARLIS ALMONTE and RICARDO RODRIGUEZ, did knowingly and intentionally conspire with other persons known and unknown to bring to the United States illegal aliens for the purpose of commercial advantage and private financial gain; in violation of Title 8, United States Code, § 1324(a)(2)(B)(ii).

<u>Manner and Means</u>

In furtherance of this conspiracy, and to effect the objects thereof, defendants FARLIS ALMONTE and RICARDO RODRIGUEZ utilized the following manner and means among others:

1. In their roles as United States Customs and Border Protection Officers assigned to, at times, the primary inspection booths at the San Ysidro Port of Entry, defendants FARLIS ALMONTE and RICARDO RODRIGUEZ were tasked with ensuring that only persons with legal status were allowed entry into the United States.

2. Defendants FARLIS ALMONTE and RICARDO RODRIGUEZ shared with their co-conspirators the times when they were scheduled to be operating the primary booths at the San Ysidro Port of Entry, along with the particular lane that they were assigned to.

3. During those periods, defendants FARLIS ALMONTE and RICARDO RODRIGUEZ would allow entry to illegal aliens by, among other things, failing to meaningfully inspect vehicles (and the occupants) that passed through the primary lanes they were assigned to.

4. During those periods and in an effort to conceal their activity, FARLIS ALMONTE and RICARDO RODRIGUEZ would fail to document into TECS the actual number of occupants in vehicles crossing through the primary lanes that they were assigned to.

<u>Overt Acts</u>

In furtherance of said conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

1. On or about August 24, 2024, defendant FARLIS ALMONTE admitted into the United States a white BMW that contained illegal aliens. After that crossing, FARLIS ALMONTE communicated with a co-conspirator his upcoming schedule at the San Ysidro Port of Entry, adding that he had seen earlier the driver of that BMW.

2. On or about October 15, 2024, defendant RICARDO RODRIGUEZ admitted into the United States a vehicle containing two visible passengers, yet RODRIGUEZ

documented into TECS that only the driver was present. The passengers were aliens without authorization to enter or remain in the United States.

3. On or about November 12, 2024, defendant RICARDO RODRIGUEZ admitted into the United States a vehicle containing several visible passengers, yet RODRIGUEZ documented into TECS that only the driver was present. The passengers were aliens without authorization to enter or remain in the United States.

4. On or about November 28, 2024, defendant RICARDO RODRIGUEZ admitted into the United States a vehicle containing several visible passengers, yet RODRIGUEZ documented into TECS that only the driver was present. The passengers were aliens without authorization to enter or remain in the United States.

5. On or about December 6, 2024, FARLIS ALMONTE admitted into the United States a white Honda sedan with an active TECS alert on its license plate without meaningful inspection. ALMONTE then falsely asserted to others that he instead received an error on his primary booth terminal and that there was not a white sedan at his booth when the alert populated. ALMONTE then documented into TECS that the vehicle contained only an "unknown" number of passengers. The passengers were aliens without authorization to enter or remain in the United States.

All in violation of Title 18, United States Code, § 371.

## Counts 2–4

On or about September 25, 2024, within the Southern District of California, defendant, FARLIS ALMONTE, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that the aliens, namely Diana JUAREZ-Sanchez, M.L.S.J., and M.B.S.J., had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens for the purpose of commercial advantage and private financial gain; in violation of Title 8, United States Code, § 1324(a)(2)(B)(ii) and Title 18, United States Code, § 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

## Counts 5–7

On or about November 28, 2024, within the Southern District of California, defendant, RICARDO RODRIGUEZ, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that the aliens, namely FNU LNU, FNU LNU, and FNU LNU, had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens for the purpose of commercial advantage and private financial gain; in violation of Title 8, United States Code, § 1324(a)(2)(B)(ii) and Title 18, United States Code, § 2.

## Count 8

Beginning on a date unknown and continuing up to and including January 20, 2025, within the Southern District of California and elsewhere, defendant, FARLIS ALMONTE, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally in return for being induced to do an act and omit to do an act in violation of his official duty; that is, in exchange for money, FARLIS ALMONTE agreed to admit aliens into the United States through the San Ysidro Port of Entry while he operated the primary inspection booths as a United States Customs and Border Protection Officer; in violation of Title 18, United States Code, § 201(b)(2)(C).

## Count 9

Beginning on a date unknown and continuing up to and including January 20, 2025, within the Southern District of California and elsewhere, defendant, RICARDO RODRIGUEZ, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally in return for being induced to do an act and omit to do an act in violation of his official duty; that is, in exchange for money, RICARDO RODRIGUEZ agreed to admit aliens into the United States through the San Ysidro Port of Entry while he operated the primary inspection booths as a United States Customs and Border Protection Officer; in violation of Title 18, United States Code, § 201(b)(2)(C).

The complainant states that this complaint is based on the attached Probable Cause Statement incorporated herein by reference.

_____
SARA HITTINGER
*Digitally signed by SARA HITTINGER*
*Date: 2025.03.24 13:45:47 -07'00'*

Special Agent Sara Hittinger
Department of Homeland Security
Office of Inspector General

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 24th day of March 2025

_____
HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

**PROBABLE CAUSE STATEMENT**

During my duties as a Special Agent for the Department of Homeland Security (DHS) Office of the Inspector General (OIG), I have learned the following information from my personal observations and having read reports prepared by other law enforcement officers. The following does not contain all information known to me or other federal agents regarding this investigation but does contain those facts believed to be necessary to establish the requisite probable cause for the violations alleged herein.

**INTRODUCTION**

Beginning in September 2024, OIG identified several reactive alien-smuggling defendants that each asserted that he had been directed to cross through the San Ysidro Port of Entry (POE) through a particular lane during a particular hour-long period. This was because, they stated (or at least alluded to), the group they were working with had a United States Customs and Border Protection Officer (CBPO) working for them.

Based on review of those defendants' crossing histories, telephone evidence, and other material, both ALMONTE and RODRIGUEZ were identified as the corrupt CBPOs. Subsequent review of other crossing records reflected that both ALMONTE and RODRIGUEZ often admitted into the country several other cars with multiple visible passengers, but they documented that only the driver was in the car.

**Count 1 – Conspiracy to Bring in Aliens for Financial Gain**

Evidence of ALMONTE and RODRIGUEZ conspiring with others to bring in aliens for financial gain is presented here as a function of three reactive arrests at the POE, including statements by those defendants and phone evidence, as well as other abnormal events at the POE, along with unexplained cash deposits by ALMONTE and RODRIGUEZ into accounts they maintain.

*Arrest of REACTIVE DEFENDANT #1*

At about 2:30 a.m. on September 5, 2024, REACTIVE DEFENDANT #1 drove into the United States through lane 5 at the POE as the sole visible occupant of his white BMW. CBPO Quach was assigned to the lane, and after a cursory inspection, he found two people

hiding under a blanket in the rear. The pair were later determined to be aliens without documents allowing them to enter or remain in the United States.

In his post-arrest statement, REACTIVE DEFENDANT #1 admitted to the smuggling, adding that a person was to pay him $7,000 for it. That person, REACTIVE DEFENDANT #1 added, told him to cross through lane 5 between 2:00 a.m. and 3:00 a.m. and that a black male officer, who the group already paid, would be working the lane. But when REACTIVE DEFENDANT #1 approached the lane, an Asian officer was working the lane instead. (ALMONTE appears to be of Dominican descent.)

Evidence recovered from REACTIVE DEFENDANT #1's phone corroborated his statements. In a screenshot of a WhatsApp message thread with what appears to be his smuggling coordinator, the coordinator explained to REACTIVE DEFENDANT #1 that "It's two that are working … with me" and that one was "coming to Tijuana after getting off work" so he could "introduce" REACTIVE DEFENDANT #1 to him. In a separate screenshot of a WhatsApp message thread between a contact saved as "Farli Usa" (ALMONTE's first name is "Farlis") with an unidentified party (believed to his coordinator), "Farli Usa" explained that he "did not get more shifts" but discussed his upcoming shift from 2:00 p.m. to 10:00 p.m., adding that he saw the "driver" who was wearing a hat and driving a white BMW. (During REACTIVE DEFENDANT #1's relevant crossings, he drove his white BMW while wearing a hat.)

REACTIVE DEFENDANT #1 otherwise had three relevant other crossings into the United States: August 17, 2024, through RODRIGUEZ's lane, August 24, 2024, through ALMONTE's lane, and again on August 29, 2024, through RODRIGUEZ's lane. REACTIVE DEFENDANT #1 has identified each of these dates as dates when he was illegally crossing aliens.

About 90 minutes after REACTIVE DEFENDANT #1 was detained on September 5, ALMONTE, working a different primary booth at the POE, queried REACTIVE DEFENDANT #1, his car, and the smuggled persons through a CBP system documenting several pieces of information, including seizure data. Because REACTIVE DEFENDANT

#1 was not seeking admission through ALMONTE's lane at the time, ALMONTE appeared to have no legitimate reason to make those queries.

*Arrest of REACTIVE DEFENDANT #2*

At about 12:30 p.m. on September 25, 2024, REACTIVE DEFENDANT #2 drove into the United States through lane 17 at the POE with only an adult female passenger visible. But at the primary booth, REACTIVE DEFENDANT #2 provided his ID and only a male's ID on behalf of his passenger. The CBPO noticed this discrepancy and detained them. The adult female then alerted the CBPO to her two kids hidden in the rear of the car. All three were later determined to be aliens without documents allowing them to enter or remain in the United States.

Post-arrest, REACTIVE DEFENDANT #2 admitted to the smuggling in exchange for $3,000, adding he was told by his recruiter that the group was working with a CBPO at the POE. Evidence recovered from REACTIVE DEFENDANT #2's phone showed that, approximately 45 minutes before he entered the country, REACTIVE DEFENDANT #2 was directed to enter lane 16 at the POE: The other party told him that "You already know 16" and to "Erase everything."

But when REACTIVE DEFENDANT #2 entered the POE, he entered through lane 17. ALMONTE, meanwhile, was manning the primary booth at lane 16 at the time. Two days after REACTIVE DEFENDANT #2 was arrested, ALMONTE queried the same CBP system for both REACTIVE DEFENDANT #2 and the car he was driving, again without any apparent legitimate purpose.

*Arrest of REACTIVE DEFENDANT #3*

At about 9:30 p.m. on December 6, 2024, REACTIVE DEFENDANT #3 entered the United States through the POE in a car with four other people. While lined up to enter through lane 16 (ALMONTE was manning that primary booth at the time), a CBPO in pre-primary approached the car and, when presented with IDs for the occupants, noticed that the documents did not appear to have been issued to the passengers. Those four were later determined to be aliens without documents allowing them to enter or remain in the United States, and REACTIVE DEFENDANT #3 was arrested.

During his post-arrest statement, REACTIVE DEFENDANT #3 admitted to the smuggling, stating that he was to be paid $1,000 and was told to go through lane 16 that day because the group had a CBPO at the POE working for them. REACTIVE DEFENDANT #3 also admitted to smuggling on behalf of the group earlier, too.

Subsequent review of REACTIVE DEFENDANT #3's earlier crossings showed that he often entered the POE through lanes manned by ALMONTE or RODRIGUEZ. In those crossings, despite having at least one other visible occupant in the car, ALMONTE or RODRIGUEZ documented in crossing records that only the driver was present. For example, TECS records show that on October 15, 2024, REACTIVE DEFENDANT #3 entered the POE through lane 15, manned by RODRIGUEZ. A passenger is clearly visible seated next to REACTIVE DEFENDANT #3, but RODRIGUEZ entered only REACTIVE DEFENDANT #3's information into TECS.



Similarly on November 12, 2024, REACTIVE DEFENDANT #3 entered the POE through lane 17, again manned by RODRIGUEZ. Several passengers are clearly visible in the car, but RODRIGUEZ again entered only REACTIVE DEFENDANT #3's information into TECS.

Then on November 28, 2024, REACTIVE DEFENDANT #3's car was lined up to enter the POE through lane 14. Despite being relatively close to that primary booth, the car then reversed out of that lane, forcing two other cars to reverse out of the way, before maneuvering to line up for lane 15, manned by RODRIGUEZ.

Again, several people (at least three) can be seen in the car along with REACTIVE DEFENDANT #3 when he entered the country. But RODRIGUEZ entered only REACTIVE DEFENDANT #3's information into TECS. REACTIVE DEFENDANT #3 has admitted that he was smuggling aliens on that date.

### *ALMONTE Allows Entry of Car with TECS Alert Without Sending to Secondary*

On December 6, 2024, a white Honda sedan with an active TECS alert on its license plate entered the POE through lane 16, manned by ALMONTE. The TECS alert generated a mandatory referral to secondary inspection of the car. But ALMONTE instead allowed the car to enter the United States without going to secondary inspection.

Shortly thereafter, ALMONTE contacted the vehicle secondary lot supervisor and asserted that he (ALMONTE) had received a "system error" on his primary terminal regarding the license plate of a white car. ALMONTE added that there was not a white car at his booth when the alert populated, asserting instead that there was only a blue car present and that it was not the same car that generated the TECS alert.

But TECS records show otherwise. The white sedan with the license plate tied to the TECS alert can be seen in photographs as it approached ALMONTE's booth at the time. ALMONTE otherwise inputted only an "unknown" number of passengers in the car for the vehicle encounter.

Review of records show that this car had five prior crossings into the United States between late October 2024 and early December. Each prior crossing was processed either by ALMONTE or RODRIGUEZ, and each was suspicious: Photographs show that the driver, who appeared to be young, presented an ID for a 62-year-old man as his own, and that multiple occupants were visible in the car but only the driver was inputted into TECS.

### *Cash Deposit Activity*

Both ALMONTE and RODRIGUEZ, in bank accounts they maintain, deposited abnormal amounts of cash in the latter half of 2024.

In the year-and-a-half period before mid-August 2024, ALMONTE appeared to deposit only about $1,600 in cash into his account through about five transactions. No deposit exceeded $700. But beginning in late August 2024 and through late November 2024

(a three-month period), he appeared to deposit almost $22,000 in cash into his account broken out into small deposits. And some of those deposits—like on September 26 and November 17—were made on the same day.

Similarly, while RODRIGUEZ had no cash deposits to his account between January 2023 and early May 2024, beginning on May 11, 2024, and through late November (a six-month period), he appeared to deposit almost $24,000 into his account, also broken out into small deposits.

In my training and experience and conversations with other officers, I am aware that corrupt officers often get paid in cash and then deposit the criminal proceeds in smaller amounts and sometimes across several bank accounts.

### Counts 2–4 – Bringing in Aliens for Financial Gain – September 25, 2024

As described above and incorporated here by reference, on September 25, 2024, REACTIVE DEFENDANT #2 drove into the United States through the wrong lane – lane 17 – at the San Ysidro POE with an adult female passenger, later determined to be Diana JUAREZ-Sanchez, visible. At the primary booth, he presented to the CBPO only a male's ID on behalf of JUAREZ, and so both were quickly detained. JUAREZ then alerted to the CBPO to her two kids, M.L.S.J. and M.B.S.J., that were hidden in the rear of the car. Subsequent review of records determined that JUAREZ, M.L.S.J., and M.B.S.J. were aliens with no legal right to enter or remain in the United States.

REACTIVE DEFENDANT #2 later admitted to the smuggling, adding that he was told by someone he was working with to enter lane 16 instead, which CBP records reflect was manned by ALMONTE. Evidence from REACTIVE DEFENDANT #2's telephone supported his claim. Also, two days after REACTIVE DEFENDANT #2 was arrested, ALMONTE queried, without any apparent legitimate reason, a CBPO system for both REACTIVE DEFENDANT #2 and the car he was driving.

### Counts 5–7 – Bringing in Aliens for Financial Gain – November 28, 2024

As described above and incorporated here by reference, on November 28, 2024, REACTIVE DEFENDANT #3 entered the San Ysidro POE and was lined up to approach the primary booth at lane 14. But, as shown by video of the pre-primary area, REACTIVE

DEFENDANT #3 appeared to reverse from that line, forcing two other cars behind him to similarly reverse, so that he could maneuver his car to enter through lane 15, instead.

RODRIGUEZ was manning the primary booth at lane 15 at the time. Photographs of the car REACTIVE DEFENDANT #3 was driving that day show at least three passengers—FNU LNU, FNU LNU, and FNU LNU—visible in the car. But RODRIGUEZ documented in crossing records that only REACTIVE DEFENDANT #3 was in the car. REACTIVE DEFENDANT #3 has admitted that those individuals were aliens.

## Counts 8–9 – Receipt of Bribes by a Public Official

As described above and incorporated here by reference, during the relevant period, up to and including January 20, 2025, both ALMONTE and RODRIGUEZ were United States Customs and Border Protection Officers. And as CBPOs in the primary booths at the San Ysidro POE, they were tasked with, among other things, ensuring that only those persons with the legal right to enter the country do so.

But, as shown above, both ALMONTE and RODRIGUEZ failed to perform their official duties, often admitting without any meaningful inspection cars with multiple passengers, while documenting that only the drivers were present. And during that period, bank accounts controlled by ALMONTE and RODRIGUEZ reflected abnormal cash deposit activity. Consistent with my training and experience and discussions with others in law enforcement, corrupt officers often agree to forego to perform their official duties in exchange for cash payments.

## Request for Sealing

It is further respectfully requested that this Court issue an Order sealing, with disclosure permitted to defendants' counsel pursuant to an early disclosure agreement, Federal Rule of Criminal Procedure 16, or until further order of this Court, all papers submitted in support of this Complaint packet, including the Complaint, Affidavit, and Motion to Seal. Sealing is necessary because the facts and evidence presented in this Complaint packet are relevant to an ongoing investigation, and premature disclosure of the contents of this Complaint packet may have a negative impact on this continuing

investigation, may cause ALMONTE, RODRIGUEZ, or both to flee, or may cause the destruction of evidence.

### Request for Arrest Warrants

Finally, pursuant to the instant Complaint, it is further respectfully requested that this Court issue a warrant for the arrest of ALMONTE and RODRIGUEZ.